AO 91 (Rev. 5/85) Criminal Complaint

# United States District Court

## For The District of Columbia

**UNITED STATES OF AMERICA**

v.

**SALVADOR DIAZ**

DOB: X/X/XXXX

**CRIMINAL COMPLAINT**

CASE NUMBER:

(Name and Address of Defendant)

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief.  On or about January 18, 2007 through February 2, 2007, in the District of Columbia, and elsewhere the defendant did, (Track Statutory Language of Offense)

knowing conspire to transfer an identification document, authentication feature, or false identification document knowing that such document or feature was stolen or produced without lawful authority.

in violation of Title __18__ United States Code, Section(s) <u>1028(a)(2) and (f)</u>.

I further state that I am <u>Sean T. Ryan, Special Agent with the Federal Bureau of Investigation</u>, and that this complaint is based on the following facts:

**See Attached Affidavit**

Continued on the attached sheet and made a part hereof:  ☒ Yes   ☐ No

AUSA, Susan B. Menzer   (202) 514-6968
Sworn to before me and subscribed in my presence,

Signature of Complainant
Sean T. Ryan, Special Agent
Federal Bureau of Investigation

_____
Date

at   Washington, D.C.
     City and State

_____
Name & Title of Judicial Officer

_____
Signature of Judicial Officer

# AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT
# AND ARREST WARRANTS

I, SEAN T. RYAN (hereinafter "affiant"), a Special Agent with the Federal Bureau of Investigation (hereinafter "FBI"), having been duly sworn, hereby depose and state as follows:

A. OBJECTIVE

1.   Based on the facts set forth in this affidavit, your affiant submits that there is probable cause to believe that Patricia Elizabeth Gonzalez and Salvador Diaz conspired with others to knowingly transfer identification documents, authentication features, and false identification documents, to wit, District of Columbia driver's licenses, knowing that such driver's licenses were produced without lawful authority, in violation of 18 U.S.C. Section 1028(a)(2)and(f).

B. CREDENTIALS

1.   Affiant is a FBI Special Agent assigned to the Public Corruption Squad of the Washington, D.C., Field Office.  Affiant has been a FBI Special Agent for approximately four years.  My duties include, but are not limited to, the investigation of alleged violations of Federal criminal statutes which involve corruption matters with public officials in the D.C. Metropolitan Area and the preparation, presentation and service of criminal complaints, arrest and search warrants.  Affiant is a federal law enforcement officer under applicable provisions of the United States Code and under Rule 41(a) of the Federal Rules of Criminal Procedure.

C. SOURCE OF EVIDENCE

1.   The facts set forth in this affidavit are based upon affiant's personal knowledge, knowledge obtained during my participation in this investigation, knowledge obtained from other

1

individuals including review of documents related to this investigation, communications with others who have personal knowledge of the events and circumstances described herein, and information gained through my training and experience. Since this affidavit is being submitted for the limited purpose of supporting a criminal complaint and arrest warrants, I have not included every fact known to me concerning this investigation. I have set forth only those facts that I believe are necessary to establish probable cause that the individuals named herein have violated the statutes set forth above in paragraph A.

    D.   RELEVANT STATUTE

    1.     Conspiracy To Transfer Identification Documents Produced Without Lawful Authority, 18 U.S.C. §§ 1028 (a)(2) and (f), provides, in relevant part:

    (a)     Whoever, in a circumstance described in subsection (c) of this section-

    (2)     knowingly transfers an identification document, authentication feature, or a false identification document knowing that such document or feature was stolen or produced without lawful authority;

shall be punished as provided in subsection (b) of this section.

    (d)     In this section and section 1028A --

    (1)     the term "authentication feature" means any hologram, watermark, certification, symbol, code, image, sequence of numbers or letters, or other feature that either individually or in combination with another feature is used by the issuing authority on an identification document, document-making implement, or means of identification to determine if the document is counterfeit, altered, or otherwise falsified;

   (3) the term "identification document" means a document made or issued by or under the authority of the United States Government, a State, . . . ;

   (4) the term "false identification document" means a document made of a type intended or commonly accepted for the purposes of identification of individuals that –

    (A) is not issued by or under the authority of a governmental entity or was issued under the authority of a governmental agency but was subsequently altered for purposes of deceit; and

    (B) appears to be issued by or under the authority of the United States Government, a State, . . . ;

   (6) the term "issuing authority" --

    (A) means any governmental entity or agency that is authorized to issue identification documents, means of identification, or authentication features;

   (7) the term "means of identification" means any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual, including, any –

    (A) name, social security number, date of birth, official State or government issued driver's license or identification number . . .

   (9) the term "produce" includes alter, authenticate or assemble;

   (11) the term "State" includes any State of the United States, the District of Columbia, . . . ;

   (f) Attempt and conspiracy — Any person who attempts or conspires to commit any

offense under this section shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

E. <u>FACTUAL BACKGROUND</u>

1. At all relevant times, Patricia Elizabeth Gonzalez (hereinafter referred to as "Gonzalez") was employed as a Legal Instrument Examiner with the District of Columbia Department of Motor Vehicles (hereinafter referred to as "DMV"). Her duties included processing customer transactions in all areas of DMV's operations, including processing applications submitted by individuals seeking to obtain District of Columbia driver's licenses and identification cards.

2. Prior to May 21, 2007, Gonzalez worked at the Brentwood Service Center, located at 1233 Brentwood Road, N.E. On May 21, 2007, Gonzalez was transferred to the Georgetown Service Center, which is inside the Georgetown Park Mall, located in the lower level of 3222 M Street, N.W.

3. Foreign nationals are eligible to obtain District of Columbia driver's licenses if they have proof that they are legally present in the U.S. and can continue to stay in the U.S. for at least another six months. A foreign national must also present proof of his name, date of birth, social security number, and District of Columbia residency. The DMV has specifically limited the types of documentation it will accept. For example, original birth certificates, unexpired passports or resident alien cards can prove an individual's identity (<u>i.e.</u> name and date of birth). In addition to tendering the required documentation, a foreign national must complete and sign a driver's license application, certifying that the information contained therein is correct and accurate. The DMV employee processing the application is required to identify on the application the type of documentation that was presented by the applicant.

4.      Applicants for driver's licenses must pass the following three tests: vision screening, knowledge and street sign recognition and skills road.  Applicants who possess a valid driver's license from another state, however, are only required to pass the vision screening test.  Applicants who possess a valid driver's license from a foreign jurisdiction, need not take the road test, but must successfully pass the eye screening and knowledge and street sign recognition tests.

5.      On October 19, 2005, at approximately 4:24 p.m., Gonzalez renewed a District of Columbia driver's license for Salvador Diaz (hereinafter referred to as "Diaz"), who no longer resided in the District of Columbia.

6.      On April 4, 2007, a foreign national (hereinafter referred to as "CW-1") admitted to the FBI that he paid $1,500.00 to illegally obtain a District of Columbia driver's license.  Approximately five years ago, CW-1 entered the U.S. illegally from Honduras.  He resided in Virginia with relatives and did not possess a valid social security number.  He called a telephone number that someone had given him and discussed with an individual named Salvador the possibility of purchasing a driver's license.  On February 2, 2007, per Salvador's instructions, CW-1 drove to Washington, D.C. and met Salvador in the Home Depot parking lot across from the Brentwood DMV office.  After CW-1 paid Salvador $1,500.00 in cash, he went inside the Brentwood DMV office where he was greeted by a female DMV employee who spoke to him in Spanish.  CW-1 did not complete a driver's license application nor did he provide any of the required documentation to prove his legal presence within the U.S., D.C. residency, name, date of birth, or social security number to this DMV employee.  She nevertheless processed CW-1's transaction for a new driver's license, including accepting a $39.00 money order as payment of DMV's fee.  She issued CW-1's

driver's license without requiring him to take and pass DMV's required vision, knowledge or skills road tests.

7.     CW-1 provided the FBI with the telephone number he called to speak with Salvador. Records from the cellular carrier identified the subscriber as Diaz and confirmed that CW-1 and the Diaz were in telephonic contact. Indeed, on February 2, 2007, the date CW-1 illegally obtained his D.C. driver's license, CW-1 and Diaz were in telephonic contact 14 times.

8.     DMV's records reflect that CW-1's license was processed by Operator 1533, an electronic identifier unique to Gonzalez. The records further reflect that Gonzalez manually input an invalid social security number. When the DMV computer system rejected the transaction based upon an invalid social security number, Gonzalez used her override authority to continue processing the transaction. Gonzalez also made the following entry: "Verified SSA print-out." As such, she falsely asserted that CW-1 had provided a print-out from the Social Security Administration as proof of the number's validity. Gonzalez made another false entry when she typed into DMV's computer system that CW-1 provided Gonzalez with a valid Virginia driver's license. CW-1 admitted, and records from Virginia's Department of Motor Vehicles confirmed, that no such license existed. Furthermore, a thorough search of DMV's paper records failed to locate an application completed by CW-1 even though it is standard operating procedure for all DMV clerks to maintain such documentation.

9.     On May 3, 2007, another foreign national (hereinafter referred to as "CW-2") admitted that he paid $1,200.00 in cash to illegally obtain a District of Columbia driver's license. CW-2 also illegally entered the U.S. from Honduras approximately six years ago and currently

resides in Virginia. He and CW-1 are friends and co-workers. Because he similarly could not obtain a driver's license through legal channels, he followed CW-1's advice and called Diaz's cellular number. He arranged to meet Diaz on January 18, 2007, in the Home Depot parking lot across from the Brentwood DMV office. CW-2 got into the front passenger seat of Diaz's dark color, four door car. Although Diaz had told CW-2 on the telephone that the driver's license would cost $1,500.00, he only asked CW-2 for $1,200.00. Then, Diaz instructed CW-2 to go into the lobby of the Brentwood DMV office. When CW-2 entered, he was immediately greeted by a female DMV employee who spoke to him in Spanish. Although CW-2 did not provide the DMV employee with any documentation and she did not require him to take any tests, she processed CW-2's transaction and issued him a new driver's license. CW-2 returned to the Home Depot parking lot where he told Diaz that he successfully obtained the driver's license.

10. CW-2 was shown a photo spread of six individuals of similar appearance and identified a photograph of Diaz as the individual CW-2 paid to obtain the driver's license. CW-2 was also shown a photo spread of six individuals of similar appearance and identified Gonzalez as the DMV employee that processed and issued CW-2's driver's license.

11. A review of Diaz's telephone records confirmed that CW-2 and Diaz were in telephonic contact. On January 18, 2007, the date of CW-2's driver's license purchase, CW-2 and Diaz were in telephonic contact 11 times.

12. A review of DMV's records corroborate that Operator 1533, i.e. Gonzalez, completed this transaction. The transaction details further show that Gonzalez manually input an invalid social security number as the social security number assigned to CW-2. When the DMV computer system

rejected this transaction, Gonzalez manually overrode the system to continue processing the transaction. In addition, Gonzalez falsely noted that CW-2 had presented a SSA print-out as verification of his social security number. She further noted that SSA's computer system was not properly functioning, and therefore, she was unable to verify the social security number listed on CW-2's driver's license. DMV authorities also have no physical record of CW-2's application even though it is standard operating procedure for all DMV clerks to maintain such documentation for the DMV files.

 F. <u>CONCLUSION</u>

Based on the foregoing, affiant respectfully submits that there is probable cause to believe that Gonzalez and Diaz have engaged in the crime set forth in Paragraph A, above. Wherefore, affiant respectfully requests that a complaint and warrants be issued authorizing the arrests of Patricia Elizabeth Gonzalez and Salvador Diaz for the above-stated violations of Title 18, United States Code, Sections 1028 (a) (2) and (f).

        SEAN T. RYAN
        FBI Special Agent

Subscribed and sworn to before

me this \_\_\_\_\_ day of January, 2008.

THE HONORABLE
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF COLUMBIA