UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | Criminal No. ~~08-011-139~~ 08-139 |
| | : | Magistrate No. 08-011-M-01 |
| | : | |
| v. | : | Violations: |
| | : | |
| **SALVADOR DIAZ,** | : | 18 U.S.C. §§ 201(b)(1)(A) and 2 |
| | : | (Payment of Bribe to a Public Official) |
| **Defendant.** | : | |

FILED
JUN 2 0 2008
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

### STATEMENT OF OFFENSE

Pursuant to Federal Rule of Criminal Procedure 11, defendant **SALVADOR DIAZ** ("**DIAZ**") and the United States agree and stipulate as follows:

1. Foreign nationals are eligible to obtain District of Columbia driver's licenses if they have proof that they are legally present in the U.S. and can continue to stay in the U.S. for at least another six months. A foreign national must also present proof of his name, date of birth, social security number, and District of Columbia residency. The District of Columbia Department of Motor Vehicles ("DMV") has specifically limited the types of documentation it will accept. For example, original birth certificates, unexpired passports or resident alien cards can prove an individual's identity (i.e., name and date of birth). In addition to tendering the required documentation, a foreign national must complete and sign a driver's license application, certifying that the information contained therein is correct and accurate. The DMV employee processing the application is required to identify on the application the type of documentation that was presented by the applicant.

2. Applicants for driver's licenses must pass the following three tests: vision screening, knowledge and street sign recognition and skills road. Applicants who possess a valid driver's license from another state, however, are only required to pass the vision screening test.

Applicants who possess a valid driver's license from a foreign jurisdiction need not take the road test, but must successfully pass the eye screening and knowledge and street sign recognition tests.

3.  On October 19, 2005, at approximately 4:00 p.m., defendant **DIAZ** sought and received the assistance of DMV employee Patricia Gonzalez to renew his District of Columbia driver's license even though defendant **DIAZ** no longer resided in the District of Columbia.

4.  In the fall of 2006, defendant **DIAZ** began bringing other foreign nationals to Gonzalez at the Brentwood branch of the DMV to obtain facially valid driver's licenses even though he knew that these individuals were not eligible or could not legally obtain a District of Columbia driver's license. Most, if not all, of these individuals were not eligible to obtain such driver's licenses because they did not reside in the District of Columbia and/or were not legally present within the U.S. Further, many of these individuals were unable to read in either English or Spanish and, therefore, were unable to pass the knowledge and road skills tests. To solicit her assistance, defendant **DIAZ** paid Gonzalez between $500 and $800 for every fraudulent license she issued. In return for the money, Gonzalez did not require these individuals to complete applications or verify the information she entered into the computer system. As stated above, she issued these licenses without requiring these individuals to pass any of the three required examinations. Gonzalez continued to accept payments of cash from defendant **DIAZ** in return for issuing facially valid driver's licenses to ineligible individuals until May 2007, when she transferred to the Georgetown branch of the DMV. Between September 2006 and May 2007, defendant **DIAZ** telephoned Gonzalez more than 400 times to facilitate the procurement of dozens of fraudulent driver's licenses. In total, defendant **DIAZ** paid Gonzalez in excess of $10,000.

5. For example, on or about November 7, 2006, in the early afternoon, defendant **DIAZ** drove a co-worker from a construction job, Jose Blanco, to the Brentwood DMV branch. After Blanco paid defendant **DIAZ** $500 in $100 and $20 bills, defendant **DIAZ** instructed Blanco to go inside the DMV, sit down, and wait for the only Spanish-speaking DMV employee, a short Hispanic woman, to assist him. Blanco followed defendant **DIAZ**'s instructions. Gonzalez, who had received several telephone calls from defendant **DIAZ** that day alerting her that Blanco would be coming to her, signaled Blanco to come to her window. Without requiring him to complete an application, provide any verification of D.C. residency or legal presence in the U.S., or take the vision, knowledge, and road skills tests, Gonzalez issued Blanco a facially valid D.C. driver's license that falsely bore a D.C. address of 1841 Columbia Road, N.W.

6. The following day, on or about November 8, 2006, defendant **DIAZ** met another individual named Jorge, in the parking lot in front of the Brentwood DMV. Jorge had previously contacted defendant **DIAZ** to help his co-worker, Ever Padilla, purchase a facially valid D.C. driver's license. After Jorge paid defendant **DIAZ** $1,000 in $20 bills, Padilla went inside the DMV, sat down, and waited for the only Hispanic DMV employee, Gonzalez, to give him a signal by nodding her head. Padilla gave Gonzalez his employment authorization document and a piece of paper that contained Jorge's D.C. address and his employment authorization document. Without requiring him to complete any applications or taking any tests, Gonzalez issued Padilla a facially valid D.C. driver's license that falsely bore a D.C. address of 1515 Ogden Street, N.W., and an expiration date of July 5, 2011, significantly longer than the period

of time he was legally permitted to reside in the U.S.

_____
SALVADOR DIAZ, Defendant